LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiffs*

JUDGE ABRAMS

14 CV 3281

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MATTHEW FERMIN and JANCKELL FERMIN,
*on behalf of themselves, FLSA Collective Plaintiffs
and the Class,*

        Plaintiffs,

        v.

ENGLISH ENTERPRISES, INC.,
OLIVES NY LLC, and TODD
ENGLISH

        Defendants.

---

Case No.:

CLASS AND COLLECTIVE
ACTION COMPLAINT

---

Plaintiffs, MATTHEW FERMIN and JANCKELL FERMIN ("Plaintiffs"), on behalf of

themselves and others similarly situated, by and through their undersigned attorneys, hereby file

this Class and Collective Action Complaint against Defendants, ENGLISH ENTERPRISES,

INC., OLIVES NY LLC (the "Corporate Defendants") and TODD ENGLISH (the "Individual

Defendant" and collectively with the Corporate Defendant, the "Defendants") and state as

follows:

## INTRODUCTION

1.   Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et. seq.* ("FLSA") that they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid gap time and overtime, (3) liquidated damages, and (4) attorneys' fees and costs.

2.   Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid gap time and overtime, (3) unpaid spread of hours, (4) unpaid call-in pay, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

3.   Plaintiffs further allege that, pursuant to New York Human Rights Law, N.Y. Exec. Law §296, they are entitled to recover from Defendants for discrimination based on race and/or color: (1) compensatory and punitive damages and (2) attorneys' fees and costs.

4.   Plaintiffs further allege that, pursuant to New York City Human Rights Law, Administrative Code of the City of New York §8-107 *et seq.* they are entitled to recover from Defendants for discrimination based on race: (1) compensatory and punitive damages and (2) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1391.

6.   Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

7.  Plaintiff, MATTHEW FERMIN, is a resident of Bronx County, New York.

8.  Plaintiff, JANCKELL FERMIN, is a resident of Bronx County, New York.

9.  TODD ENGLISH ENTERPRISES, INC., is a domestic corporation organized under the laws of the State of Massachusetts, with its executive office located at 90 MAIN STREET, CHARLESTOWN, MA 02129. TODD ENGLISH ENTERPRISES, INC. owns over twenty restaurants in the U.S., including Todd English's Olives New York restaurant.

10. OLIVES NY LLC, is a foreign limited liability company organized under the laws of the State of Delaware, with an address for service of process located at 1 FIRST AVENUE, CHARLESTOWN, MA 02129. OLIVES NY LLC operates Todd English's Olives New York restaurant.

11. TODD ENGLISH is President of the Corporate Defendants. TODD ENGLISH makes operational decisions (including payroll and wage and hour policies) concerning Todd English's Olives New York and meets with managers whom he directs to supervise employees at Todd English's Olives New York. TODD ENGLISH hires managers to supervise employees' day to day activities but has ultimate authority over staffing, payroll and all wage and hour policies at Todd English's Olives New York.  He also supervises employees directly. For example, when he visits the restaurant and observes that an employee is performing poorly, he will yell at the employee and correct any inadequacy in the service provided by staff to customers. Defendant ENGLISH usually visits the Todd English's Olives New York establishment several times a month. During his visits, he stays for at least 5 hours, supervising employees, inspecting the establishment and correcting any inadequacies. TODD ENGLISH exercises, and also delegates to managers, the power and authority to (i) fire and hire, (ii) determine rate and method of pay,

3

(iii) determine work schedules and (iv) otherwise affect the quality of employment, of Plaintiffs, the FLSA Collective Plaintiffs and the Class Members, but Defendant ENGLISH retains ultimate control over the terms and conditions of their employment. Defendant ENGLISH also has the power and authority to supervise and control supervisors of Plaintiffs, the FLSA Collective Plaintiffs and the Class members.

12. The Defendants operate a restaurant business under the trade name Todd English's Olives New York ("Olives New York"). Olives New York is located in the W New York hotel located at 201 PARK AVE SOUTH, NEW YORK NY 10003.

13. At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

14. At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all tipped employees employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

16. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rues, all culminating in a willful failure and refusal to pay them the proper minimum wage, gap time pay and overtime premium at the rate of one and one

4

half times the regular rate for work in excess of forty (40) hours per workweek. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs. Plaintiffs and the FLSA Collective Plaintiffs claim that Defendants willfully violated their rights by failing to pay their minimum wages in the lawful amount for hours worked. Defendants, however, were not entitled to take any tip credits under the FLSA, because they (i) failed to properly provide notice to all tipped employees that Defendants were taking a tip credit, (ii) caused tipped employees to engage at least 20% of their working hours in non-tipped activities and (iii) failed to properly track daily tips received by tipped employees and (iv) maintained an improper tip pool because management set the tip pool policies without any input from employees.

17. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

18. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all tipped employees employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

19. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20. The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, upon information and belief, Defendants have employed at least forty (40) members of the Class.

21. Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay minimum wage, (ii) failing to pay gap time pay (iii) failing to pay overtime compensation, (iv) failing to pay spread of hours, (v) failing to provide wage statements that were in compliance with the requirements under the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced

and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

23. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not names in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a)  Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

    b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

    c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

    d)  Whether Defendants properly notified Plaintiffs and the Class members of their hourly rate and overtime rate;

    e)  Whether Defendants properly provided proper notice to all tipped employees that Defendants were taking a tip credit;

    f)  Whether Defendants took proper amount of tip credit allowance under the New York Labor Law;

    g)  Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to all tipped employees per requirements of the New York Labor Law;

8

h) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workday;

i) Whether Defendants maintained an improper tip pool;

j) Whether Defendants paid Plaintiffs and Class members the federal and state minimum wage for all hours worked;

k) Whether Defendants properly compensated Plaintiffs and Class members for overtime under state and federal law;

l) Whether Defendants paid Plaintiffs and Class members spread of hours;

m) Whether Defendants paid Plaintiffs and Class members call-in pay; and

n) Whether Defendants failed to properly compensate Plaintiffs and Class members for all their gap time due to a policy of time shaving and failing to correctly track the hours worked by Plaintiffs and Class members.

## STATEMENT OF FACTS

26. In or about April 2012, Plaintiff, MATTHEW FERMIN, was hired by Defendants to work as a barback for Defendants at their "Todd English's Olives New York" restaurant, also known as "Olives New York", located in the W New York hotel located at 201 PARK AVE SOUTH, NEW YORK NY 10003.

27. From April 2012 to February 2013, Plaintiff, Matthew Fermin regularly worked over forty (40) hours per week. Specifically, he worked from 4:00pm to 3:00am, for 4 days a week. As a barback, Plaintiff was paid an hourly rate of $6.00 per hour.

28. From February 2013 to May 2013, Plaintiff Matthew Fermin regularly worked over forty (40) hours per week. He worked as both a barback and as a bartender and was paid the same

hourly rate of $5.00 per hour for both positions. On the two days a week that he worked as a barback, Plaintiff Matthew Fermin worked from 4:00pm to 3:00am. On the 2 or 3 days a week that he worked as a bartender, Plaintiff Fermin worked from 10:00am to 4:30pm.

29. From May 2013 to October 2013, Plaintiff Matthew Fermin worked 2 to 3 days a week as a bartender full time and was paid an hourly rate of $5.00.

30. At all times, Plaintiff Matthew Fermin, was a tipped employee and was paid below the minimum wage. Plaintiff Matthew Fermin's employment with Defendants ended on October 8, 2013.

31. On June 6, 2012, Plaintiff, Janckell Fermin, was hired by Defendants to work as a barback for Defendants at their "Olives New York" restaurant, located at 201 Park Ave South., New York NY 10003.

32. From June 2012 to August 2013, Plaintiff Janckell Fermin worked regularly worked over forty (40) hours per week. Specifically, he worked from 4pm to 3am, for 4 to 5 days a week. As a barback, Plaintiff Janckell Fermin was paid an hourly rate of $6.00 per hour.

33. From August 2013 to October 2013, Plaintiff Janckell Fermin regularly worked over forty (40) hours per week. During this period, Plaintiff Janckell Fermin worked as a barback 4 to 5 days a week from 10am to 4:30pm and 1 to 2 days a week as a bartender from 4pm to 3am. He was paid an hourly rate of $6.00 per hour.

34. At all times, Plaintiff Janckell Fermin, was a tipped employee and was paid below the minimum wage. Plaintiff Janckell Fermin's employment with Defendants ended on October 15, 2013.

35. Plaintiffs were managed by Tom Favure, who was controlled by the Individual Defendant.

36. During Plaintiffs' employment, Mr. Favure often made discriminatory remarks to employees, including, but not limited to the following:

    a) Often stated that a Mexican employee, Mark [last name unknown], must love to drink tequila "because he's Mexican";

    b) Often told Black and Latino employees that they must "like to eat fried chicken."

In addition, Mr. Favure, oftentimes gave Chris [last name unknown], a Caucasian employee, the preferred Saturday night bartending shift, and gave Plaintiff Matthew Fermin and other employees of color a less favorable work schedule despite such employees of color having seniority and more experience. As a result of a less favorable work schedule, such employees received less compensation and less tip income.

37. Defendants knowingly and wilfully operated their business with knowledge that Plaintiffs and other employees of color were being discriminated against based on race and/or color.

38. Defendants caused disparate treatment towards Plaintiffs and other employees of color due to discrimination based on race and/or color and suffered financial consequences.

39. Defendants' failure to stop the harassment created a hostile work environment.

40. Defendants' actions and conduct were intentional and intended to harm Plaintiffs and other employees of color.

41. As a result of Defendants' discriminatory treatment of Plaintiffs, Plaintiffs suffered emotional distress.

42. During their employment, Plaintiffs and Class members did not receive any notice that Defendants were taking a tip credit. In addition, they did not receive any notice as to the amount of tip credit allowance taken for each payment period during their employment. They were also not informed in writing as to their hourly rate of pay and overtime rate of pay.

43. Plaintiffs and other tipped employees were required to engage more than 20% of their working time in non-tipped related activities such as cleaning the establishment. Such activities were unrelated to their primary duties as barbacks and bartenders and include FLSA Collective Plaintiffs and Class members.

44. Defendants also maintained an improper tip pool because management set the tip pool policies without any input from employees. When he began working at Defendants' establishment, Plaintiff FERMIN was informed of Defendants' tip pool policy by his former manager, Ian [last name unknown]. Under the policy, bartenders had to share 50% of their daily tips with the barbacks working during their shifts. Defendants never asked Plaintiff FERMIN whether he found the tip pooling arrangement acceptable, nor did Plaintiff FERMIN observe Defendants make such inquiries of any other tipped employees during his employment.

45. Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class often worked in excess of forty hours per week. Plaintiffs, FLSA Collective Plaintiffs and Class members' paystubs did not accurately reflect their working hours. Plaintiffs, FLSA Collective Plaintiffs and Class members were instructed to arrive to work early and change into their uniforms before clocking in. Such time shaving policy resulted in a reduction of wages for hours worked for all tipped employees. In addition, while Plaintiffs, the FLSA Collective Plaintiffs and Class members typically worked over 10 hours, such hours would be reduced to zero overtime hours or just one or two overtime hours per week.

46. Defendants unlawfully failed to pay the Plaintiffs, the FLSA Collective Plaintiffs, and Class members the proper gap time pay minimum wage for all hours worked.

47. Defendants failed to correctly keep track of the daily amount of tips received by Plaintiffs, FLSA Collective Plaintiffs and Class members, and also failed to keep the proper

employment records required under the FLSA and NYLL. Defendants consistently paid Plaintiffs, FLSA Collective Plaintiffs and Class members their tips at least a month late rather than in the week such tips were earned. Tip compensation recorded on paystubs only included credit card tips, and not cash tips.

48. For the hours that Defendants did pay Plaintiffs, Defendants paid Plaintiffs, the FLSA Collective Plaintiffs and the Class members, invalid "tip credit" minimum wage, which is less than the federal and New York State minimum wages. Defendants were not entitled to take any tip credits under the FLSA or NYLL, because they (i) failed to properly provide notice to all tipped employees that Defendants were taking a tip credit in violation of the FLSA and NYLL and (ii) caused tipped employees to engage in non-tipped duties exceeding 20% of each workday in violation of NYLL and (iii) maintained an improper tip pool because management set the tip pool policies without any input from employees.

49. Defendants failed to properly notify Plaintiffs, the FLSA Collective Plaintiffs, and Class members of their hourly rate of pay and overtime rate of pay, in direct violation of the New York Labor Law. Defendants also failed to provide proper wage and hour notices, at the date of hiring and annually, to all non-exempt employees in violation of the requirements of the New York Labor Law.

50. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to the Plaintiffs, FLSA Collective Plaintiffs and Class members due to the invalid tip credit that Defendants claimed. Plaintiffs and Class members' workdays regularly exceeded ten hours per day. However, Defendants knowingly and willfully operated their business with a policy of not paying spread of hours to Plaintiffs and Class members.

51. Defendants knowingly and willfully operated their business with a policy of not paying call-in pay to the Plaintiffs and Class members when Defendants sent Plaintiffs and Class members home when the restaurant was not busy. Such instances occurred at least once per week.

52. Defendants knowingly and willfully operated their business with a policy of not paying gap time pay, minimum wage, or spread of hour to the Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked in excess of forty hours per week.

53. As a result of the acts and conduct complained herein, Plaintiffs have suffered and will continue to suffer the loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails

54. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

55. Plaintiffs reallege and reaver Paragraphs 1 through 54 of this class and collective action Complaint as if fully set forth herein.

56. At all relevant times, Defendants were and continue to be employers engages in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

14

57. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

58. At all relevant times, the Corporate Defendants had gross annual revenues in excess of $500,000.

59. At all relevant times, the Defendants had a policy and practice of refusing to pay gap time pay and overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty hours per work week.

60. Defendants failed to pay Plaintiffs and FLSA Collective Plaintiffs overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

61. At all relevant times, the Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs and FLSA Collective Plaintiffs for their hours worked.

62. Defendants willfully violated Plaintiffs' and FLSA Collective Plaintiffs' rights by failing to pay them minimum wages in the lawful amount for hours worked. Defendants were not entitled to take any tip credits under the FLSA.

63. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

64. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs as the

statutory rate of time and one-half for their hours worked in excess of forty hours per week when Defendants knew or should have known such was due.

65. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

66. As a direct and proximate cause result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

67. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages and unpaid overtime wages, plus an equal amount as liquidated damages.

68. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

69. Plaintiffs reallege and reaver Paragraphs 1 through 68 of this class and collective action Complaint as if fully set forth herein.

70. At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

71. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them (i) gap time pay and (ii) overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

72. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

73. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay Plaintiffs minimum wages in the lawful amount for hours worked. Defendants, however, were not entitled to take any tip credits under the NYLL, because (i) they failed to properly provide notice to all tipped employees that Defendants were taking a tip credit in violation of the NYLL, (ii) they failed to provide proper wage statements informing tipped employees of the amount of tip credit taken for each payment period in violation of the NYLL, (iii) they caused tipped employees to engage in non-tipped duties exceeding 20% of each workday in violation of NYLL and (iv) maintained an improper tip pool because management set the tip pool policies without any input from employees.

74. Defendants failed to pay spread of hours to Plaintiffs and Class members. Plaintiffs and Class members' workdays regularly exceeded ten hours per day but they were not paid their spread of hours.

75. Defendants failed to pay call-in pay to Plaintiffs and Class members. Plaintiffs and Class members were sent home early when the restaurant was slow but were not paid for their shifts.

76. Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all tipped employees per requirements of the New York Labor Law.

## COUNT III

## <u>VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW</u>
(RACE DISCRIMINATION)

77. Plaintiff realleges and reavers Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78. New York Executive Law § 296 prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race and/or color and also prohibits retaliation against individuals who in good faith complain about discriminatory practices to which they have been subjected.

79. Plaintiff is an employee and a qualified person within the meaning of the New York State Human Rights Law ("NYSHRL") and Defendants are covered employers under the NYSHRL.

80. Defendants operated a business that discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiffs to invidious discrimination and harassment based upon their race and/or color, up to, and including Defendants' decision to give Caucasian employees better work shifts at the expense of non-Caucasian employees and make discriminatory remarks about people of color.

81. Defendants condoned the discriminatory acts and practices as alleged above and, as a result, the Plaintiffs have suffered, and will continue to suffer, substantial losses including loss of past earnings and other employment benefits, and have suffered other monetary and compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation.

82. Defendants willfully violated The New York State Human Rights Law, as amended. They were aware of the blatant discrimination based on race and yet failed to correct or reprimand the instigators of such harassing conduct.

83. Defendants knowingly and willfully violated the New York State Human Rights Law, as amended, because Defendants terminated the employment of Plaintiff on the basis of her race.

84. Due to Defendants' violations under The New York State Human Rights Law, as amended, based on discrimination of the basis of race, Plaintiff is entitled to recover from Defendants: (1) compensatory and punitive damages and (2) attorneys' fees and costs.

COUNT IV

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
### (DISCRIMINATION)

85. Plaintiff realleges and reavers Paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

87. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiffs because of their race and/or color.

88. Plaintiffs are an employee and a qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

89. Defendants operated a business that discriminated against Plaintiffs in violation of the NYCHRL by subjecting Plaintiffs to discrimination and a hostile work environment.

90. Plaintiffs were subjected to invidious discrimination and harassment in their employment, based upon their race and/or color, up to, and including Defendants' discriminatory remarks about people of color and unfair and preferential work scheduling afforded to Caucasian employees at the expense of non-Caucasian employees in the terms of employment.

91. Defendants willfully violated The New York City Human Rights Law, as amended. They were aware of the blatant discrimination based on race and yet failed to correct or reprimand the instigators of such harassing conduct.

92. Defendants knowingly and willfully violated the New York City Human Rights Law, as amended, because Defendants based the terms and conditions of Plaintiffs' employment on the basis of their employees' race and/or color. Defendants are thereby liable to Plaintiffs for compensatory damages under the Administrative Code.

## COUNT V

### DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (SUPERVISOR LIABILITY)

93. Plaintiff realleges and reavers Paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1) the employee or agent exercised managerial or supervisory responsibility; or

20

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

95. Defendants violated the section cited herein as set forth.

96. At all relevant times, Defendants operated a business that discriminated against Plaintiffs, on the basis of their race and/or color.

97. Defendants engaged in unlawful discriminatory practices by discriminating against the Plaintiffs by making discriminatory statements to employees and giving Caucasian employees better work shifts at the expense of non-Caucasian employees.

98. Defendants willfully violated the New York City Human Rights Law, as amended. They were aware of blatant discrimination based on race and yet failed to correct or reprimand the instigators of such harassing conduct.

99. Due to Defendants' violations under The New York City Human Rights Law, as amended, based on discrimination of the basis of race, Plaintiffs are entitled to recover from Defendants: (1) compensatory and punitive damages and (2) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b. A declaratory judgment that the acts and practices complained of herein are in violation of the New York State Human Rights Law, Executive Law §296 *et seq.*; and the Administrative Code of the City of New York §8-107 *et seq.*;

c. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d. An award of gap time and unpaid overtime compensation due under the FLSA and the New York Labor Law;

e. An award of unpaid minimum wages due under the FLSA and the New York Labor Law;

f. An award of unpaid spread of hours due under the New York Labor Law;

g. An award of unpaid call-in pay due under the New York Labor Law;

h. An award of unpaid compensation due to Defendants' policy of time shaving and failing to correctly track the hours worked;

i. An award of liquidated and/or punitive damages as a result of Defendants' wilful failure to pay overtime compensation and minimum wage pursuant to 29 U.S.C. § 216;

j.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wage and spread of hours pursuant to the New York Labor Law;

k.   An award of monetary, compensatory and punitive damages as provided by the Executive Law and the Administrative Code;

l.   An award of prejudgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert feed and statutory penalties;

m.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

n.   Designation of this action as a class action pursuant to F.R.C.P. 23;

o.   Designation of Plaintiffs as Representatives of the Class; and

p.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: May 6, 2014

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

By: _____
C.K. Lee